## FRANCES HUNNEWELL *vs.* GEORGE LANE.

A daughter indorsed and delivered to her father, at his request, promissory notes owned by her, on his declaring to her that this was necessary in order to secure the property for her, and upon no other consideration : The father made a will, by which, after several bequests, he gave the residue of his property to his executor, and ordered the said notes to be delivered to him in trust to invest said property and notes in stock, and to receive and pay over the income thereof to his daughter, during her life, and to pay the principal, at her decease, to such person as she might by her last will direct, and in default of such will and direction, to pay the same to her heir or heirs at law, to have and to hold the same forever; and by a codicil he gave several legacies, to be paid after the decease of his daughter : He died insolvent, and the money due on the said notes was claimed for his creditors. *Held*, on a bill in equity brought by the daughter against the father's executor, that the notes were holden by the father in trust for her use and benefit; that his creditors had no claim upon them; and that the daughter had a right to terminate the trust, if she so elected, and to have the trust property restored to her by the executor.

THE plaintiff alleged, in a bill in equity, that she, on the 12th of May 1834, owned and possessed $7000 and more, in cash, and lent $3000 thereof to Lane & Read, and $4000 thereof to Lincoln Fearing, and took notes therefor payable with interest, and received the interest thereon for several years : That on the 1st of April 1838, and at other times between that day and the 1st of April 1840, while she possessed said notes and property, and the income thereof, her father, Jonathan Hunnewell, represented to her that said notes and property were not safe or secure in her hands and care, but were in danger of being lost, destroyed or misappropriated by her, and that he would take possession of the same, and manage them for her benefit, in such manner as to secure them and the income thereof, for her sole use and benefit ; that he was about making his last will; that his estate was solvent, and that he should owe no debts at his decease ; that if she would deliver to him her said notes and property, he would give and bequeath them to certain persons in trust for her sole use and benefit, so they should be forever secured to her for her sole and separate use, and the income thereof be paid to her during her life ; and that said property would be placed in the hands of discreet persons, who would manage it with

care and prudence, and preserve it beyond the reach of fraud and accident, for her benefit.

The bill further alleged, that the plaintiff, relying on the representations and statements of the said Jonathan, and upon the express promise and consideration that he would bequeath said property in trust for her use and benefit, indorsed said notes and delivered them to him ; that he, on the 1st of April 1840, made and executed his last will in due form of law, and among other things therein directed that said notes should be delivered to his executors, Tyler Bigelow and George Lane, to be held in trust to invest the same, according to their best skill and judgment, and in such manner as to produce six per cent. at least, and to pay over the income thereof, quarterly or half yearly, to the plaintiff during her life ; and upon the further trust, to pay over the principal thereof, which might remain at the plaintiff's decease, to such person or persons as she might, by her last will, order and direct, and in default of such will, order and direction, to pay over the same to her heir or heirs at law, to have and hold the same forever : That said will was proved and allowed by the judge of probate for the county of Norfolk, on the 23d of April 1842 ; that, before the probate of said will, Tyler Bigelow, one of the executors named therein, refused to accept the trust of executor ; and that after the probate thereof, letters testamentary were issued to the defendant, the other executor, who gave bond according to law, and accepted and assumed the trusts in the said will set forth and declared, as executor and trustee under the same : That the defendant took into his custody and care all the property that was in said testator's possession at the time of his decease, for the purpose of administering thereon, and took possession, among other things, of the aforesaid notes, which had been delivered by the plaintiff to said testator, to be held by him in the manner and for the purposes above set forth ; that the defendant, as executor of said will, rendered an inventory on oath, of the estate and property of which said testator died seized and possessed, in which the notes and property aforesaid, which had come into the defendant's

possession, were not included; that the defendant did not claim said notes and property as of the estate of the testator, and did not administer upon the same as such; but used and managed them as being the sole property of the plaintiff, and as in his possession and care for her sole use and benefit; and from time to time paid to the plaintiff sums of money, for her use, out of the income of said notes and property, from the 23d of April 1842, to the 1st of February 1843.

It was further stated in the bill, that the said Lincoln Fearing, in 1842, paid his said note for $4000, and the interest then due thereon, to the plaintiff, in presence of the defendant, and by his consent; that she thereupon gave the money, so paid to her, to the defendant, to be held by him for the purposes and trusts set forth in said will; that the defendant received said money, and promised the plaintiff to hold the same for her sole use and benefit, in the manner above set forth, and afterwards invested the same in some public stock or security, in the name of the plaintiff, and for her use and benefit.

The bill then averred that between said 23d of April 1842 and the 1st of February 1843, divers large claims against the estate of said testator were presented to the defendant, as executor, for payment, and it thereby became manifest that the testator had died insolvent: That after said claims were so presented, viz. in February 1843, the defendant rendered an additional inventory of the property belonging to the testator, in which he included the notes and money aforesaid, belonging to the plaintiff, as the property of the testator, and to be appropriated, as such, to the payment of all his debts, and thereupon represented to the judge of probate that the testator's estate was insolvent; and that thereupon such proceedings were had in relation to said estate as are prescribed by law, when the estate of a deceased person is insolvent: That the defendant pretends that said notes and property were the property of said testator, and are assets in the defendant's hands as executor, and are to be applied to the payment of all the testator's debts.

The prayer of the bill was, that the defendant make full answer, render an account, and be decreed forthwith to deliver the property aforesaid, belonging to the plaintiff, or the full amount thereof, to her or her guardian, or to some person to be appointed by the court as her trustee, to hold it upon the same trusts and for the same purposes as it was held by the testator in his life time ; and that such decrees might be passed as might be necessary to enforce the said trusts.

The defendant, in his answer, stated that he had been informed that on or about the 12th of May 1834, the plaintiff's father had in his possession $7000, the proceeds of the sale of certain estate of the plaintiff; but as he had no certain means of knowing the fact, he prayed that, if it were material, the plaintiff might make the proper proof thereof. He further stated, that said Jonathan Hunnewell lent part of said sum to William Read, and took the note of Lane & Read therefor, payable to the plaintiff or her order ; but he denied that said money was lent to Lane & Read. He further stated that he believed that said Jonathan lent part of said $7000 to Lincoln Fearing, and took therefor his note payable to the plaintiff or order ; and that said Jonathan, at the time of lending said money, declared that it was the property of the plaintiff. The defendant averred that he did not know whether said notes were ever held in the plaintiff's possession ; but he averred that, for many years before the death of said Jonathan, they were in his pocket-book, which was placed in the defendant's hands, and there kept, except when said Jonathan sent for them to receive and indorse the interest on them. The defendant further stated that he did not know whether said Jonathan made to the plaintiff the representations and promises set forth in the bill; nor whether the plaintiff, for the purpose and object set forth in the bill, delivered said notes to the said Jonathan ; but that the notes were indorsed by the plaintiff to said Jonathan, and were taken possession of by the defendant, as his executor ; that said Jonathan, by his last will, as stated in the bill, and by the

codicil  thereto,*  did  treat, consider and dispose of said notes
in  a  manner inconsistent  with  the  alleged  facts, conditions
and  considerations in the bill set forth.

The defendant admitted the other main facts stated in the
bill, and prayed that protection from the court  to which trus-
tees acting in good faith are entitled in a court of equity.

The plaintiff filed a replication, and took evidence.

*G.  T.  Bigelow*, for the plaintiff.

*Bartlett*, for the defendant.

WILDE, J.    The principal question to be decided in this
case is, whether the property claimed by the plaintiff was
held by her father, Jonathan Hunnewell, in trust for her use
and benefit, as alleged in the bill.    If it were so held, it is
very clear that the defendant, his executor, and his heirs
and creditors, are bound by the trust.    It was not in the
power of the trustee to devest or defeat the trust, without the
consent of the *cestui que trust*, except by a sale of the trust
property to a *bonâ fide* purchaser, for a valuable consideration,
and without notice of the trust.    Nor could the trustee vary
the terms of the trust, or declare any new trust, to the preju-
dice of the *cestui que trust*, unless with her consent.    The
case therefore turns on the question stated, namely, whether
the property claimed by the plaintiff was held in trust by
her father for her benefit ; for if the notes indorsed by her
to her father became his property, in which she had no bene-
ficial interest, the gift to her by his will would not be valid
against his creditors, although it would be binding on his
heirs and his executor, if his estate were solvent.    But we

* The  codicil  was  as  follows :  " At and  after  the  death  of  my daughter
Frances, I give and bequeath to Theoda H. Adams, and to Harriet W. Fearing,
Catherine Fearing and Theoda H. Fearing, or to such of them as shall be then
living, the sum of five hundred dollars each, to be paid by my executors and
trustees, on their arrival at the age of eighteen years, or on their marriage,
whichever may first happen after my said daughter's decease.    I also give and
bequeath to Mehitabel Holmes and to Esther Rice the sum of five hundred
dollars each, to be paid them after the decease of my said daughter, should
they then be living, by my said executors.    Also the further sum of five hun-
dred  dollars I give to my granddaughter Sarah Moore, to be paid her after the
decease of my daughter Frances."

think it very clear, from the evidence, that the notes in question were held by Jonathan Hunnewell in trust for the sole use and benefit of the plaintiff, and that the legal title to the notes was transferred to him, to manage the same for her sole use, benefit and behoof, and to preserve them beyond the reach of fraud or accident, as averred in the bill. This is fully proved by the deposition of Tyler Bigelow, Esq. who was for a long time Mr. Hunnewell's principal adviser, and who was well acquainted, as it seems, with all the facts and circumstances in relation to the trust. He testifies that the notes in question were the plaintiff's property, and were indorsed by her to her father, at his request, he declaring to her that this was "necessary in order to secure the property for her;" that there was no other consideration for the indorsement; that he always said the property in the notes belonged to his daughter, (the plaintiff,) and that he once told the deponent that they were the proceeds of a house or some other property, which had come to her from her mother or some other relation. That this is very full and satisfactory evidence of the creation of the trust set out in the bill, cannot be doubted; nor is there any fact or circumstance proved in the case, which has any tendency to raise a doubt as to the creation and continuance of the trust.

It has been argued for the defendant, that it may be reasonably inferred from the whole evidence, that the plaintiff gave up her property to her father absolutely, in consideration of his promise to make her his residuary legatee. But there is no circumstance from which any such inference can be drawn. There is nothing in the will inconsistent with the existence of the trust. Mr. Bigelow, who drew up the will, certainly did not suppose there was any such inconsistency; for he well knew that the notes were held in trust; and by the will they are given in trust to his executors, to pay over the income to the plaintiff for and during her natural life, and to pay over the whole amount of the principal, which might remain at her decease, to such person or persons as she, by her last will and testament, might order and direct; and in

default of such will, order and direction, to pay over the same to her heir or heirs at law, to have and to hold the same for- ever. This disposition of the trust property is not inconsist- ent with the trust, as originally created; but it was intended, doubtless, to continue the trust to be performed by his exec- utors. Nor is there any thing in the codicil inconsistent with the trust. It is true that he thereby gives sundry lega- cies, to several legatees, after the death of the plaintiff. But these legacies were not made payable specifically out of the trust property; and the testator, believing himself sol- vent, might suppose that he might have other property suf- ficient to enable his executors to pay these legacies. But if it were otherwise, and the legacies were made payable out of the trust property, it would not necessarily be incon- sistent with the trust; for if the plaintiff had died unmar- ried, before her father, and without making any disposition of the trust property, it would have gone to the father as her heir, and would have been subject to his disposition by will or otherwise.

Upon the whole, therefore, we are clearly of opinion that the trust, as set out in the bill, is fully and satisfactorily proved; and that the plaintiff is well entitled to the relief prayed for. It is probably not very material whether the trust be continued or not; but if the plaintiff elects to termi- nate the trust, and to be restored to the possession of the trust property, the defendant has no right to object to the restora tion. The trust was voluntary, and the sole object was to secure the property, and to have it managed in the most advantageous manner for her benefit. As her property will be under the control and management of her guardian, there seems no reason for the continuance of the trust.